**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| SHERLYN JACOBS,<br>*Estate of Deceased Marvin Jacobs*,<br><br>Plaintiff,<br><br>v.<br><br>FIDELITY WORKPLACE SERVICES, LLC,<br><br>Defendant. | ) | CASE NO. 1:25-CV-1719<br><br>JUDGE PAMELA A. BARKER<br>UNITED STATES DISTRICT JUDGE<br><br>MAGISTRATE JUDGE<br>JENNIFER DOWDELL ARMSTRONG<br><br>**REPORT AND RECOMMENDATION** |

## I. INTRODUCTION

Pro se plaintiff Sherlyn Jacobs filed this action under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001–1461, against Fidelity Workplace Services, LLC ("Fidelity").[1] She has said that she is bringing this action on her own behalf and on behalf of the estate of the deceased Marvin Jacobs, Sr., as its personal representative and executor. Ms. Jacobs is the surviving spouse of Mr. Jacobs, who worked for General Motors for more than 30 years before retiring, and who sadly passed away in January 2023.

Ms. Jacobs alleges that Fidelity has violated ERISA by wrongfully denying her application for survivor pension benefits under the pension plan sponsored by GM, by failing to provide her with relevant plan documents, and by breaching its fiduciary duty to her and to Mr. Jacobs's estate.

[1] Ms. Jacobs originally named the defendant as "Fidelity Investment," but the Clerk has changed the case caption based on Fidelity Workplace Services, LLC's answer and representation that it is the correct legal entity in this case. (*See, e.g.*, Corporate Disclosure Statement, ECF No. 8, PageID# 63.) Ms. Jacobs maintains that "Fidelity Investments" is the proper defendant because Fidelity Workplace Services, LLC; Fidelity Workplace Services Holdings LLC; and FMR LLC "are all part of the Fidelity Investments corporate family operating under one umbrella entity with centralized control and shared operations" and because "'Fidelity Investments' is the brand and legal entity known to plan participants, employees, and retirees." (ECF No. 16, PageID# 148–49.) For now, I will use the name as the Clerk maintains it on the docket, as the ultimate resolution of this issue does not change the analysis as it relates to the pending procedural challenge.

Fidelity denies that Ms. Jacobs is entitled to recover benefits or any other relief, asserting (among other things) that she is not a beneficiary under the plan.

This case is before me pursuant to the Court's order referring this matter to me for general pretrial supervision, including overseeing service; conducting a Case Management Conference; overseeing the exchange of documents that constitute the administrative record and, if applicable, the discovery process; and resolving all non-dispositive motions. (Order of Referral, ECF No. 4.)

Currently pending is Ms. Jacob's procedural challenge regarding the administrative record. (ECF No. 33.) The parties have completed briefing on the issue (ECF Nos. 33, 34, 35), and therefore the challenge is ripe for review.

For the foregoing reasons, I RECOMMEND that (1) the Court CONSTRUE IN PART the procedural challenge (ECF No. 33) as an evidentiary objection to the administrative record and OVERRULE the objection, and otherwise (2) DECLINE to find a colorable procedural irregularity and DENY additional discovery.[2]

## I. PROCEDURAL HISTORY

On August 18, 2025, Ms. Jacobs (proceeding pro se) filed a complaint against Fidelity asserting a civil ERISA action pursuant to 29 U.S.C. § 1132.[3] She brings the action on behalf of

---

[2] I proceed by way of report and recommendation out of an abundance of caution because my recommendation to decline to find a procedural deficiency and order additional discovery could be viewed as dispositive to any non-merits claim Ms. Jacob could bring in this action.

[3] Ms. Jacobs's complaint inconsistently lists the causes of action she is pursuing in this case. In addition to her largely consistent ERISA allegations, at various points she identifies what would be state common law claims for breach of contract, fraudulent misrepresentation, and negligence. (*See* Compl., ECF No. 1, PageID# 3–4.) But she does not include any state causes of action under the section designated for the identification of her claims. (*See id.*, PageID# 9–11). Then, *after* the request for relief, she includes a section called "legal basis," in which she brings back the state common law causes of action while also adding a reference to a claim under the Ohio Consumer Sales Practices Act (Ohio Rev. Code § 1345.01, *et seq.*). (*See id.*, PageID# 13.) She identifies 28 U.S.C. § 1367 as a basis for jurisdiction, but only "**[t]o the extent** [that] any state law claims [are] asserted." (*Id.*, PageID# 5) (emphasis added). She says that she is seeking damages, in part, to compensate her for "severe emotional distress, financial instability and prolonged hardship." (*Id.*, PageID# 14–15.) She says she is seeking punitive damages and damages related to the

herself and on behalf of the Estate of Marvin Jacobs as its personal representative and executor.[4] Without minimizing other allegations contained in the complaint, essentially Ms. Jacobs claims that she married Mr. Jacobs in 2020 and at some point he sought to update his pension elections with Fidelity to identify Ms. Jacobs as his survivor beneficiary. (*See* Compl., ECF No. 1, PageID# 7.) Ms. Jacobs claims that Mr. Jacobs submitted the required documentation to make that change and then called Fidelity in September 2021, in a call that she says was recorded, to confirm that the change was effective. (*See id.*) She says that a Fidelity representative confirmed on that call that Ms. Jacobs was listed as the surviving spouse beneficiary and would receive pension benefits upon Mr. Jacobs's death. (*See id.*) But she says that Fidelity refused to approve her application for benefits in 2023 and has since refused to produce a recording of the September 2021 call or copies of the relevant emails and forms Mr. Jacobs submitted to effectuate the change. (*See id.*, PageID# 7–8.) Mr. Jacobs's benefits are allegedly being paid to his ex-wife, despite the fact that the two divorced in 1998. (*Id.*, PageID# 8.)

On September 3, 2026, the Court referred the case to me for general pretrial supervision, including overseeing service; conducting a Case Management Conference; overseeing the exchange of documents that constitute the administrative record and, if applicable, the discovery process; and resolving all non-dispositive motions. (Order of Referral, ECF No. 4.)

---

"[m]ismanagement . . . of funds . . . ." (*Id.*, PageID# 15.) She references "state penalties." (*Id.*) In response, Fidelity says that "any claims or remedies not provided for under ERISA, such as state law claims, would be completely pre-empted by ERISA and subject to dismissal." (Ans., ECF No. 9, PageID# 74, 98.) For now, I will just note that the resolution of any properly pleaded and justiciable non-ERISA claims is not relevant to the resolution of the pending ERISA procedural challenge.

[4] (*See, e.g.*, Compl., ECF No. 1, PageID# 6, PageID# 10 ("to Mr. Jacobs and Plaintiff," PageID# 15 ("Sherlyn Jacobs and The Estate of Marvin Jacobs are . . ."); Minutes of Proceedings [non-document], Oct. 21, 2025).

I granted Ms. Jacobs permission to proceed in forma pauperis (ECF No. 3), and Fidelity was duly served in September 2025. (ECF No. 6.)

Fidelity filed its Answer on September 30, 2025. (ECF No. 9.) Fidelity admits that Mr. Jacobs was a participant in GM's pension plan (*id.*, PageID# 68, 79), but it denies that Ms. Jacobs is a beneficiary under the plan or that its representatives ever assured either of them that she was. (*See id.*, PageID# 68–69.) Without minimizing the other denials and affirmative defenses Fidelity has asserted, essentially Fidelity's position is that Mr. Jacobs never took the required actions to remove his prior spouse as his elected beneficiary under the plan or to add Ms. Jacobs as his elected beneficiary. (*See id.*, PageID# 81, 83–84.) It says that it is not the plan administrator for purposes of the requirement to provide plan documents. (*See id.*, PageID# 85.)

After the initial pleadings, the parties participated meaningfully in case management and discovery discussions. (*See generally* ECF No. 12, ECF No. 13, ECF No. 18.) The primary issue when this matter came to the initial CMC was the availability of discovery, if any. For its part, Fidelity agreed to produce to Ms. Jacobs the complete administrative record—including written communications and recorded phone calls—but it denied that further discovery should take place. (Minutes, Oct. 21, 2025). Its position was that the case should be resolved by cross dispositive motions as set forth in *Wilkins v. Baptist Healthcare System, Inc.*, 150 F.3d 609 (6th Cir. 1998). (ECF No. 12, PageID# 121.) For her part, Ms. Jacobs asked for "full discovery under the Federal Rules of Civil Procedure." (ECF No. 13-1, PageID# 129.) She said that this case should not be confined to the administrative record because her "complaint includes broader claims including record keeping errors, failure to update beneficiary information, and fiduciary misconduct that cannot be resolved by reviewing an incomplete record." (ECF No. 18, PageID# 159.)

After discussing these issues with the parties at the CMC, I set a briefing deadline for a motion for discovery after the production of the administrative record. (Minutes, Oct. 21, 2025.)

On January 5, 2026, Ms. Jacobs filed a motion to compel, asking the Court to compel the production of "a complete and readable administrative record" and "accurate call logs and recordings." (ECF No. 19, PageID# 174, 183–84.) She claimed that Fidelity's call logs were "microscopic" and "unreadable" and omitted information about the time and date of the call. (*Id.*, PageID# 175.) She said that Fidelity's recordings had been produced "without identifying metadata." (*Id.*) She said that the call logs were "redacted" and several recordings were "silent." (*Id.*) She said that the log identified calls for which no recording had been produced. (*Id.*) And she said that Fidelity had not produced the recording from the call she says Mr. Jacobs made on September 29, 2021. (*Id.*) She also claimed to be entitled to discovery of the plan's annual statements. (*Id.*, PageID# 184.)

Fidelity responded that it had produced the entire administrative record and said that Ms. Jacobs was demanding that it "produce something that does not exist" as part of the administrative record. (ECF No. 20, PageID# 205, 208–09.) It described the administrative record as "544 pages of documents, bates numbered . . ., and 40 phone call recordings, labeled . . . ." (*Id.*, PageID# 207.) It said each page of the administrative record can be "clearly viewed and read by enlarging the text size on the viewing computer screen." (*Id.*, PageID# 209.) It explained that it had redacted portions of social security numbers, birthdates, addresses, and telephone numbers as part of its standard confidentiality practices but offered to reveal that information where necessary to decide the merits of the case. (*Id.*, PageID# 209–10.) Fidelity said that it had "conducted an exhaustive search" for a call recording from September 29, 2021, but no recording involving Ms. or Mr. Jacobs was located. (*Id.*, PageID# 210.)

I ultimately denied Ms. Jacobs's motion to compel, without prejudice, because she had failed to comply with LR 37.1 prior to filing the motion. (ECF No. 23.) I ordered the parties to meet and confer on Ms. Jacobs's complaints about the administrative record and to file a status report after that conference. (*Id.*, PageID# 254–55.)

In the meantime, Ms. Jacobs filed another motion seeking an order requiring Fidelity to "file the complete, certified administrative record" with the Court. (ECF No. 22.) In that document, Ms. Jacobs repeats her complaints about the administrative record Fidelity produced. (*See generally id.*) She says that the administrative record should include "all the information that the plan administrator used (***or should have used***) in making the benefits decision." (*Id.*, PageID# 248 (emphasis added)). Ms. Jacobs ultimately withdrew the motion, essentially, as the parties began to meet and confer. (*See* ECF No. 25, PageID# 260; Order [non-document], Feb. 13, 2026.)

The parties met three times to discuss Ms. Jacobs's requests, and Fidelity produced additional records—including records that it said were not considered part of the administrative record in the case. (*See* Def. Status Report, ECF No. 27, PageID# 278–79; *see also* Exhibit, ECF No. 27-1.) Fidelity provided Ms. Jacobs with an affidavit confirming that it had searched for and could not locate the phone records she was specifically requesting. (ECF No. 27, PageID# 279.) Fidelity indicated that it had located an *internal* call from September 29, 2021, in which a Fidelity employee reported that "a person identifying herself as Marvin Jacobs' wife came into the Fidelity office asking questions about Marvin Jacobs' pension." (ECF No. 27-1, PageID# 285.)

The additional records produced during the meet-and-confer process brought the administrative record to 612 pages. (*See* ECF No. 27-2, PageID# 287.) Fidelity said that "any other records were not records that were created by, maintained by, or in the possession of Defendant, and, as such, could not be produced." (ECF No. 27, PageID# 279.)

Ms. Jacobs filed separate status reports (ECF Nos. 26, 28, 29) in which she said that the record remained incomplete. (*See* ECF No. 28, PageID# 298.) For one of the categories of documents she said she wanted included—written denials from GM—Ms. Jacobs admitted that no such document exists. (*See id.*) She also requested: (1) annual credit statements for Mr. Jacobs from 2020–2023; (2) documentation of Mr. Jacob's "election or rejection forms"; and (3) "[e]vidence of any HRP-60 form rejection or required call-in." (*Id.*)

I held a status conference with the parties on March 11, 2026. (Minutes, Mar. 11, 2026.) We discussed Ms. Jacobs's concerns about the administrative record, after which Fidelity agreed to submit the administrative record to the Court and to re-produce the record to Ms. Jacobs electronically. (*Id.*) I gave Ms. Jacobs some time to try to secure counsel, noting that I intended to then set a briefing schedule for any potential ERISA procedural challenge. (*Id.*) After Ms. Jacobs informed the Court that she intended to continue proceeding pro se (ECF No. 31), I set a briefing schedule (ECF No. 20).

Fidelity indicated that it sent thumb drives to the Court in March 2026 containing the administrative record, comprising "claim file and plan documents bates numbered 1-612 and 40 phone call recordings." (ECF No. 34 at 2 n.1, PageID# 336)

Ms. Jacobs timely filed her ERISA Procedural Challenge (Regarding the Administrative Record) (ECF No. 33) on May 26, 2026. Fidelity filed its response (ECF No. 34) on June 24, 2026. And Ms. Jacobs filed a reply (ECF No. 35) on July 8, 2026.

This Report and Recommendation follows.

## II. LAW AND ANALYSIS

While normally a civil litigant is entitled to broad discovery under Rule 26 of the Federal Rules of Civil Procedure, a plaintiff bringing an ERISA claim is generally limited to the

administrative record. *E.g.*, *Klusmann v. AT&T Umbrella Benefit Plan No. 1*, No. 5:24-CV-1295, 2025 WL 2615913, at *3 (N.D. Ohio Sept. 10, 2025) (Barker, J.). This is because "'the district court's review is generally limited to consideration of "the evidentiary materials contained in the administrative record."'" *Id.* (quoting *Christoff v. Ohio N. Univ.*, No. 3:23-cv-1132, 2024 WL 4363165, at *3 (N.D. Ohio Sept. 30, 2024) (quoting *Moore v. Lafayette Life Ins. Co.*, 458 F.3d 416, 430 (6th Cir. 1998)). A court cannot "admit or consider any evidence not presented to the administrator" as it relates to the merits of the action. *Moore*, 458 F.3d at 430 (quoting *Wilkins v. Baptist Healthcare System, Inc.*, 150 F.3d 609, 619 (6th Cir. 1998) (Gilman, J., concurring). The administrative record is meant to show "the facts known to the administrator" at the time of the decision, *see Judge v. Metropolitan Life Ins. Co*, 710 F.3d 651, 658 (6th Cir. 2013), and therefore it consists of that evidence which was before the decisionmakers at the time of their decision. *See Johnston v. Dow Employees' Pension Plan*, 703 F. App'x 397, 405 n.5 (6th Cir. 2017).

That said, the Court can look outside the administrative record for evidence "offered in support of a procedural challenge to the administrator's decision, such as an alleged lack of due process afforded by the administrator or alleged bias on its part." *Id.* (quoting *Wilkins*, 150 F.3d at 619 (Gilman, J., concurring)). The Court retains discretion to decide both when to allow discovery relevant to a colorable procedural challenge, and to decide how much to allow. *Klusmann*, 2025 WL 2615913, at *5 (citing *Alekna v. AT&T Service, Inc.*, No. 5:17–cv–400, 2018 WL 125767 at *2 (N.D. Ohio Mar. 12, 2018)).

Here, Ms. Jacobs alleges that the administrative record in the case has resulted from a procedurally defective review process. (Mot., ECF No. 33, PageID# 328.) She says that irregularities in the record undermine the fairness of Fidelity's decision to deny her benefits, and that her claim warrants further review. (*Id.*, PageID# 328–29.)

In support of her claims, she points generally to: (1) what she characterizes as "deficiencies" in Fidelity's production, like blank pages or pages with formatting errors; (2) the absence of records that she says should be included, like the recorded calls where Mr. Jacobs informed Fidelity of their marriage; and (3) internal records that she says show the lack of a formal decision-making process. She requests "limited discovery . . . to determine the extent of procedural defects," such as records showing Fidelity's recordkeeping practices and its decision-making process.

Fidelity calls it "rank speculation" that any procedural deficiency or bias interceded into the decision-making process here. It says that the reason Ms. Jacobs was not identified as the beneficiary—and thus the reason for its decision—is that Mr. Jacobs never submitted the required HRP-60 documentation changing his beneficiary; it says that there is no discovery that exists that would support Ms. Jacob's complaints about the record. And it says that Ms. Jacobs can still assert her arguments claiming to be the correct beneficiary as part of her dispositive motion.

In reply, Ms. Jacobs largely makes merits-based arguments about what she says the record shows. She points out that a certain filing packet was not sent through certified mail, and that Fidelity later had a correct address for herself and Mr. Jacobs, but there is no record that the packet was re-sent. She points out that the record does not show "who made the final decision" or "what evidence was reviewed" in deciding that she was not entitled to benefits. She identifies that the record contains documents showing two different dates of death for Mr. Jacobs. She says there is an audio recording wherein Fidelity was informed of the new marriage, but records do not reflect "any system update reflecting the marriage."

After careful consideration, I agree with Fidelity that Ms. Jacobs has not established a colorable procedural deficiency or bias that would permit the Court to look outside the

administrative record, and I further agree that—in light of the significant efforts made by the Court and the parties to address Ms. Jacob's complaints about the administrative record—there is nothing further left to add to it. I address these arguments separately, beginning with the latter.

**A. Evidentiary Objection to Administrative Record**

Ms. Jacobs's procedural challenge largely raises alleged deficiencies with what has been included in the administrative record. The challenge, then, can be construed—in part—as an evidentiary objection to the record. *See Demange v. Life Ins. Co. of N.A.*, No. 3:18-cv-345, 2019 WL 4541818, at *1 (N.D. Ohio Sept. 19, 2019). Like other evidentiary rulings, the Court has discretion in deciding what evidence will be considered part of the administrative record. *Johnston*, 703 F. App'x at 405 n.5 (citing *Marks v. Newcourt Credit Grp., Inc.*, 342 F.3d 444, 457–58 (6th Cir. 2003), *superseded on other grounds by regulation as recognized in Wallace v. Oakwood Healthcare, Inc.*, 954 F.3d 879 (6th Cir. 2020)).

Here, Ms. Jacob's arguments do not convince me that other documentation exists that would have been before Fidelity at the time of its benefits decision. The suggestion that the record omits documentation that was actually before Fidelity at the time of its decision is "pure speculation." *See Avery v. Sedgwick Claims Mgmt. Srvs. Inc.*, No. 22-1960, 2023 WL 4703865, at *7 (6th Cir. July 24, 2023). She cannot identify any documents within Fidelity's possession that have been omitted. *See id.*

To the contrary, Fidelity has represented that the documents in the administrative record were "produced as received" and are complete. (PageID# 338.) It has provided an affidavit regarding the phone record Ms. Jacobs says should exist, in which its representative averred that an exhaustive search did not locate any recording involving either Mr. and Ms. Jacobs from the relevant date. Even under the broader discovery of Rule 26, "[o]rdinarily, the representation of a

party's attorney that no additional documents exist is sufficient to defeat a motion to compel absent credible evidence that the representation is inaccurate." *Snyder v. Fleetwood RV, Inc.*, No. 2:13-cv-1019, 2016 WL 339972, at *6 (S.D. Ohio Jan. 28, 2016). Ms. Jacobs has not convinced me that the alleged deficiencies identified in her procedural challenge show that Fidelity's representations about the documents it has in its possession are inaccurate or that additional records somehow exist that are relevant her claims (either on the merits or on the procedural challenge). *Compare Demange*, 2019 WL 4541818, at *1 (adding records to the administrative record where the plaintiff showed that the records had been submitted to the plan administrator as part of the appeal of the denial of her benefits claim).

Additionally, Fidelity has already provided some additional records going beyond the administrative record over the course of working through these issues. It has explained how the decision was made that benefits were not payable to Ms. Jacobs, and it has pointed to the records that it believes supports that decision, namely the records showing that the HRP-60 election form was explained to and sent to Mr. Jacobs and provided to Ms. Jacobs, but that Mr. Jacobs did not properly complete the form while he was alive. (PageID# 338–39.)

Therefore, as Ms. Jacobs has not met her burden to show that additional records exist that should be included in the administrative record prior to merits review, I recommend that the Court overrule her procedural challenge (ECF No. 33) to the extent that it states an evidentiary objection to the record.

**B. Procedural Challenge**

While Ms. Jacobs devotes much of her argument to what she views as discrepancies and missing records in the administrative record, she also asks for additional limited discovery relevant to what she says are procedural irregularities in Fidelity's consideration of her benefits claim. As

discussed above, a limited exception to the general rule against ERISA discovery exists when "evidence outside the record 'is offered in support of a procedural challenge to the administrator's decision, such as an alleged lack of due process afforded by the administrator or alleged bias on its part.'" *Johnson v. Conn. Gen. Life Ins. Co.*, 324 F. App'x 459, 466 (6th Cir.2009) (quoting *Wilkins*, 150 F.3d at 619).

Ms. Jacobs does not argue bias, structural or otherwise. Her argument seems to be that Fidelity did not provide her or the Estate with due process in the administration of the GM pension plan (such as by failing to provide the relevant documents and make the beneficiary change when it learned that Mr. Jacobs had remarried) or in the consideration of her claim for benefits (such as by failing to afford her a formal enough procedure in denying her claim).

Fidelity responds by explaining how the decision was made that benefits were not payable to Ms. Jacobs and by pointing to the records that it believes supports that decision, namely the records showing that the HRP-60 election form was explained to and sent to Mr. Jacobs and provided to Ms. Jacobs, but that Mr. Jacobs did not properly complete the form while he was alive. (PageID# 338–39.)

I am convinced that the administrative record is complete and affords meaningful review to Ms. Jacob's claims and Fidelity's defenses. As Fidelity points out in its response brief, a court in this district reviewed a similar case on the merits in *Frisky-Watson v. Ford Motor Co.*, No. 1:15–CV–00083, 2015 WL 4496291 (N.D. Ohio July 23, 2015). There, a spouse's claim was denied because the employee–spouse had not submitted an election of beneficiary form while they were alive. *Id.* at *1. The spouse asserted a procedural challenge, arguing that the plan administrator had failed to consider that the employee–spouse had called Ford and attempted to make the change. *Id.*

at *3. The plaintiff asked the Court to consider a call log that had not been included in the administrative record. *Id.*

The Court reviewed the log for purpose of resolving the procedural challenge, but it declined to find a procedural irregularity where the log did not contradict the pension board's explanation of its decision-making process or show that the board had ignored relevant evidence. *Id.* at 3–4.

Similarly, Ms. Jacobs here points to no record contradicting the Defendant's explanation of its decision-making process or showing that the board ignored relevant evidence. The Defendant has diligently searched for the recorded call Ms. Jacobs says should exist, and the call could not be located. Moreover, the administrative record in this case seems actually more extensive than that in *Frisky-Watson*, as it *does* contain a log and 40 recorded calls.

Although no threshold showing is generally required to obtain limited discovery, a mere allegation of a procedural irregularity or bias is generally insufficient. *See Johnson*, 324 F. App'x at 467 (the claim must be "colorable"). And "speculation is an insufficient basis upon which to permit discovery in an ERISA case." *Sundermeyer v. Ohio Educ. Ass'n*, No. 2:12–cv–959, 2013 WL 3147952, at *6 (S.D. Ohio June 19, 2013).

Ms. Jacobs has not shown even "the barest of an additional showing" of a procedural irregularity or bias here. *Sundermeyer*, 2013 WL 3147952, at *4. She admits that the administrative record contains her appeal-related documents and the union's submissions. (ECF No. 35, PageID# 343.) Each of the arguments in support of her motion are either meritless (such as suggesting that blank pages are suggestive of a procedural lack of due process and unreliability) or speculative. Indeed, she does not identify, let alone show, any specific procedural irregularity.

She asks for discovery "to determine the extent of procedural defects." (ECF No. 33, PageID# 332.)

She suggests that there must be such defects because, for example, there is no final written decision or statement of reasons in the file. She alleges, without evidence, that the record should contain a system update reflecting her marriage. She makes several merits arguments, including that the HRP-60 form was not properly mailed to her.

These vague, speculative arguments are not sufficient to show a colorful procedural irregularity like a denial of due process or bias, especially considering the extent and character of the documents she seeks. For instance, she seems to seek personnel information regarding a Fidelity employee's reprimand, including documentation of the reprimand, identification of the error, and any corrective action taken. (ECF No. 35, PageID# 345–46.) The request is apparently based an audio recording in which one Fidelity employee mentions that another had been reprimanded. (*See id.*) But Ms. Jacobs does not attempt to connect that statement with her claim; indeed, she asks for discovery to assess whether the reprimand had an impact on her claim. Courts within our circuit are reluctant to allow such discovery in ERISA matters, *Mulligan v. Provident Life and Acc. Ins. Co.*, 271 F.R.D. 584, 594 (E.D. Tenn. 2011) (collecting cases), and Ms. Jacobs has not made a colorable showing that those records would be admissible or would lead to the discovery of other admissible evidence in her case.

Ms. Jacobs also seeks discovery into Fidelity's recordkeeping practices, into "communication discrepancies," and into Fidelity's decision-making authority and process. (ECF No. 33, PageID# 332–33.) Putting aside concerns about the vagueness and breadth of those requests, here again Ms. Jacobs has not meaningfully connected the records she seeks with a particular alleged procedural irregularity or bias. She has not alleged, for example, that Fidelity

inconsistently applies any of the terms of the plan documents. *Compare Sundermeyer*, 2013 WL 3147952, at *4. There are not multiple versions of the administrative record, such that there is an open question about what was actually reviewed. *Compare Pediatric Special Care, Inc. v. United Med. Res.*, No. 10–13313, 2011 WL 133038, at *2 (E.D. Mich. Jan. 14, 2011). And Ms. Jacobs's reliance on the absence of detailed decision-making documents alone is not a basis to open discovery, as "[p]ermitting discovery under these circumstances would open the door to discovery in many, if not all, ERISA cases, 'transforming the exception into the rule, and decimating case law underscoring the limited nature of ERISA discovery.'" *Baker v. Ohio Operating Engineers Pension Plan*, 312 F. Supp.3d 674, 680 (S.D. Ohio 2018) (quoting *Alekna*, 2018 WL 1251767, at *3.)

I have carefully reviewed Ms. Jacobs's requests and have overseen the parties' discovery disputes to date. Fidelity has complied with its obligation to produce a complete administrative record sufficient for meaningful Court review. Ms. Jacobs's "unsubstantiated concerns, coupled with her unresolved factual questions as to the details of how her own claim was processed, are insufficient to justify this Court venturing beyond the administrative record." *Alekna*, 2018 WL 1251767, at *3; *see also Pearce v. Chrysler Grp., L.L.C. Pension Plan*, 615 F. App'x 342, 350 (6th Cir. 2015) (concluding that the district court did not abuse its discretion in denying the plaintiff's request for discovery where "he argues that he should be allowed to engage in discovery to discern whether a conflict exists").

Accordingly, I recommend that the Court decline to find a colorable procedural irregularity and deny additional discovery.

## III. RECOMMENDATION

For the foregoing reasons, I RECOMMEND that (1) the Court CONSTRUE IN PART the procedural challenge (ECF No. 33) as an evidentiary objection to the administrative record and OVERRULE the objection, and otherwise (2) DECLINE to find a colorable procedural irregularity and DENY additional discovery.

Dated: October 21, 2026

/s *Jennifer Dowdell Armstrong*
JENNIFER DOWDELL ARMSTRONG
UNITED STATES MAGISTRATE JUDGE

## VII. NOTICE TO PARTIES REGARDING OBJECTIONS

Local Rule 72.3(b) of this Court provides:

> **Any party may object to a Magistrate Judge's proposed findings, recommendations or report made pursuant to Fed. R. Civ. P. 72(b) within fourteen (14) days after being served with a copy thereof, and failure to file timely objections within the fourteen (14) day period shall constitute a waiver of subsequent review, absent a showing of good cause for such failure**. Such party shall file with the Clerk of Court, and serve on the Magistrate Judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations, or report to which objection is made and the basis for such objections. **Any party may respond to another party's objections within fourteen (14) days after being served with a copy thereof.** The District Judge to whom the case was assigned shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the Magistrate Judge. The District Judge need conduct a new hearing only in such District Judge's discretion or where required by law, and may consider the record developed before the Magistrate Judge, making a determination on the basis of the record. The District Judge may also receive further evidence, recall witnesses or recommit the matter to the Magistrate Judge with instructions.

*Id.* (emphasis added).

Failure to file objections within the specified time may result in the forfeiture or waiver of the right to raise the issue on appeal either to the district judge or in a subsequent appeal to the

United States Court of Appeals, depending on how or whether the party responds to the report and recommendation. *Berkshire v. Dahl*, 928 F.3d 520, 530 (6th Cir. 2019). Objections must be specific and not merely indicate a general objection to the entirety of the report and recommendation; a general objection has the same effect as would a failure to object. *Howard v. Sec'y of Health and Hum. Servs.*, 932 F.2d 505, 509 (6th Cir. 1991).

Stated differently, objections should focus on specific concerns and not merely restate the arguments in briefs submitted to the magistrate judge. "A reexamination of the exact same argument that was presented to the Magistrate Judge without specific objections 'wastes judicial resources rather than saving them, and runs contrary to the purpose of the Magistrates Act.'" *Overholt v. Green*, No. 1:17-CV-00186, 2018 WL 3018175, at *2 (W.D. Ky. June 15, 2018) (quoting *Howard*). The failure to assert specific objections may in rare cases be excused in the interest of justice. *See United States v. Wandahsega*, 924 F.3d 868, 878–79 (6th Cir. 2019).